UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMBER PORTER, ) | |
| on behalf of K.F., a minor ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:17-cv-03077-JMS-TAB |
| NANCY A. BERRYHILL, ) | |
| *Deputy Commissioner for Operations,* ) | |
| *Social Security Administration,* [1] ) | |
| ) | |
| Defendant. ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Amber Porter on behalf of K.F.,[2] a minor, appeals the denial of K.F.'s application for supplemental security income ("SSI") benefits. Ms. Porter applied for benefits on K.F's behalf on August 27, 2012. [Filing No. 14-7 at 2.] The claim was initially denied on October 22, 2012, [Filing No. 14-4 at 6], and upon reconsideration on November 2, 2012, [Filing No. 14-4 at 18]. Administrative Law Judge ("ALJ") Mark Ziercher held a hearing on January 17, 2014, and issued a decision on October 28, 2014, concluding that K.F. was not disabled. [Filing No. 14-4 at 20.] Ms. Porter sought review by the Social Security Administration's Appeals Council, [Filing No. 14-5 at 49], which granted review on November 17, 2015, [Filing No. 14-4 at 42], and remanded the case for further proceedings, [Filing No. 14-4 at 44]. On March 21, 2016, ALJ John Metz held a supplemental hearing at which Ms. Porter and Dr. Belt, an impartial medical expert, testified.

---

[1] On March 6, 2018, the President was notified that, effective November 17, 2017, Nancy A. Berryhill could no longer serve as the Acting Commissioner of the Social Security Administration ("SSA") pursuant to the Federal Vacancies Reform Act of 1998. Government Accountability Office, https://www.gao.gov/products/D18772#mt=e-report (last visited July 11, 2018). The case caption has been updated to reflect the Deputy Commissioner's current title.

[2] To protect the minor claimant's privacy pursuant to Federal Rule of Civil Procedure 5.2, the Court will also refer to the plaintiff pursuing this action on K.F.'s behalf by his initials.

1

[Filing No. 14-2 at 11.] ALJ Metz denied the claim on May 18, 2016, [Filing No. 14-2 at 2], and the Appeals Council denied review on July 12, 2017, rendering the ALJ's decision the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for the purposes of this review, [Filing No. 14-2 at 2]. Ms. Porter filed this action on behalf of K.F. pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), requesting that the Court review the ALJ's denial of benefits. [Filing No. 1.]

# I.
## APPLICABLE STANDARD OF REVIEW

"Social security disability benefits are designed for disabled workers, but low-income parents or guardians may obtain them on behalf of disabled children as well." *Keys v. Barnhart*, 347 F.3d 990, 991 (7th Cir. 2003). For a child to be considered disabled, it must be shown that the child "has a medically determinable physical or mental impairment, which results in 'marked' and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

> [S]ince disabled children generally do not have a work history, the structure of the disability program for them is necessarily different from that for adults, except in cases in which the child has a 'listed impairment,' that is, an impairment that would entitle the adult to disability benefits without any further inquiry into his ability to perform his past work or some other work; the child is treated the same in such a case.

*Keys*, 347 F.3d at 991-92 (citing 20 C.F.R. § 416.924(d)). If the child is "not so seriously disabled as is implied by being found to have a listed impairment, then it must be determined whether [the child] is nevertheless severely limited in functioning in specified areas of life activity such as concentration and communication." *Id.* at 992.

2

To determine whether a child is disabled, the ALJ considers all relevant evidence and the combined effect of any impairments on the child's overall health and functioning. 20 C.F.R. § 416.924(a). The regulations set forth a three-step process for evaluating child disability claims. 20 C.F.R. § 416.924(a).

At Step One, if the child is doing substantial gainful activity, as defined by the regulations, the child is not disabled and the evaluation stops. 20 C.F.R. § 416.924(a)-(b). If the child is not doing substantial gainful activity, the evaluation proceeds to Step Two. 20 C.F.R. § 416.924(a).

At Step Two, the ALJ considers the child's physical or mental impairments to see if the child has an impairment or combination of impairments that are severe. 20 C.F.R. § 416.924(a). If the impairment or impairments are not severe, the child is not disabled and the evaluation stops. 20 C.F.R. § 416.924(a). If the impairment or impairments are severe, the evaluation proceeds to Step Three. 20 C.F.R. § 416.924(a).

At Step Three, the ALJ considers whether the child has an impairment or impairments that meets, medically equals, or functionally equals a listing. 20 C.F.R. § 416.924(a). If the child has such an impairment and it meets the duration requirement, the child is disabled. 20 C.F.R. § 416.924(a). If the child does not have such an impairment, or if it does not meet the duration requirement, the child is not disabled. 20 C.F.R. § 416.924(a).

A child's impairments will functionally equal a listing if they result in either a "marked" limitation in at least two of six enumerated domains of functioning or an "extreme" limitation in at least one of the domains. *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (citing 20 C.F.R. § 416.926a). The six domains are as follows: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-

being. 20 C.F.R. § 416.926a. A "marked" limitation interferes "seriously" with a child's ability to initiate, sustain, or complete activities in the domain, and an "extreme" limitation interferes "very seriously." 20 C.F.R. § 416.926a(e)(2).

This Court's role in reviewing a disability decision is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 668 (quotation omitted). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Moreover, "[a]n ALJ may not select and discuss only that evidence that favors [his] ultimate conclusion, but must articulate, at some minimum level, [his] analysis of the evidence to allow the [Court] to trace the path of [his] reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the denial of benefits. Otherwise, the Court must generally remand the matter back to the SSA for further consideration; only under rare circumstances can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.
### BACKGROUND

K.F. was seven years old when Ms. Porter filed an application for SSI benefits on his behalf in 2012. [Filing No. 14-4 at 2.] The application alleges a disability onset date of June 9, 2005,

4

due to behavioral problems, special education, and Attention-Deficit Hyperactive Disorder ("ADHD"). [Filing No. 14-4 at 2.][3]

Using the sequential evaluation set forth by the SSA, the ALJ issued a decision on May 18, 2016, finding as follows:

- At Step One, the ALJ concluded that K.F. had not engaged in substantial gainful activity since August 16, 2012. [Filing No. 14-2 at 14.]

- At Step Two, the ALJ concluded that K.F. had the severe impairments of ADHD, autism disorder, and speech impediment. [Filing No. 14-2 at 14.]

- At Step Three, the ALJ concluded that K.F. did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. [Filing No. 14-2 at 14.] The ALJ considered Listings 112.10 (Autism Spectrum Disorder) and 112.11 (ADHD). [Filing No. 14-2 at 14.]

- The ALJ further determined that K.F. did not have an impairment or combination of impairments that functionally equaled the severity of a listed impairment. [Filing No. 14-2 at 14.] Specifically, the ALJ concluded that K.F. had the following: less than "marked" limitation in acquiring and using information, [Filing No. 14-2 at 21]; less than "marked" limitation in attending and completing tasks, [Filing No. 14-2 at 22]; "marked" limitations in interacting and relating with others, [Filing No. 14-2 at 23]; less than "marked" limitation in moving about and manipulating objects, [Filing No. 14-2 at 25]; less than "marked" limitation in the ability to care

---

[3] The parties' briefs detail facts about medical treatment that K.F. has received. [Filing No. 18; Filing No. 24; Filing No. 27.] Because those facts implicate sensitive and otherwise confidential medical information concerning K.F., the Court will simply incorporate the facts by reference herein and articulate material facts as needed to resolve the parties' arguments.

for himself, [Filing No. 14-2 at 25]; and less than "marked" limitation in health and physical well-being, [Filing No. 14-2 at 26].

- Because of these findings, the ALJ concluded that K.F. was not disabled. [Filing No. 14-2 at 26.]

Ms. Porter requested that the Appeals Council review the ALJ's decision, and that request was denied on July 12, 2017. [Filing No. 14-2 at 6.] The decision of the Appeals Council is the final decision of the Commissioner for purposes of judicial review, and Ms. Porter now seeks relief from this Court. [Filing No. 1.]

## III.
### DISCUSSION

Ms. Porter asserts that the ALJ's findings concerning K.F. were based on incorrect legal standards and are not supported by substantial evidence in two domains: (1) interacting and relating to others, and (2) caring for himself. [Filing No. 18 at 6.] Ms. Porter further contends that the ALJ failed to evaluate and weigh the opinion of Dr. Meyer, which was material to K.F.'s limitations in interacting and relating with others and in caring for himself. [Filing No. 18 at 2.][4] The Court addresses each claim in turn.

**A. Domain Three: Interacting and Relating with Others**

At the hearing, Dr. Belt testified that K.F. had a "marked" and not "extreme" limitation in the domain of interacting and relating with others. [Filing No. 14-2 at 68.] The ALJ asked Dr. Belt to explain his reasoning and the following exchange occurred:

> ALJ: [I]n order for it to be extreme, then you need to show that there's no improvement, is that correct?

---

[4] Ms. Porter initially argued that the ALJ failed to evaluate her credibility, but she withdrew this claim in her reply brief. [Filing No. 27 at 14.] Accordingly, the Court will not consider that claim herein.

6

>   DOC: Correct.
>
>   ALJ: So, when you see an improvement, then you reach the conclusion that it would be marked rather than extreme, is that correct?
>
>   DOC: Yes, your honor.

[Filing No. 14-2 at 72.] Shortly thereafter, the ALJ explained his understanding of extreme to K.F.'s counsel:

> [E]xtreme means that you have—you have—basically, you have no improvement. Constantly goes lower and lower, gets worse and worse and worse. If you show any improvement at all, then under— under the definition extreme, you can't use extreme anymore. You can bring it to marked, but you can't use extreme. Extreme means really there is no improvement at all.

[Filing No. 14-2 at 73-74.]

Ms. Porter argues that Dr. Belt's testimony demonstrates that he applied the incorrect standard for "extreme" because he stated that a claimant must not demonstrate any improvement to be found "extreme." [Filing No. 18 at 32.] She argues that neither the definition for "marked" nor "extreme" indicates that an improvement precludes a finding of "extreme." [Filing No. 18 at 33.] She further argues the ALJ's testimony demonstrates that he adopted this incorrect standard when opining about K.F's limitations in the domain of interacting and relating with others. [Filing No. 18 at 33.]

In response, the Commissioner argues that Ms. Porter cited an isolated portion of the hearing transcript, and that a full reading of the transcript demonstrates that both Dr. Belt and the ALJ had a correct understanding of the regulatory definition of "extreme." [Filing No. 24 at 13.] The Commissioner alleges that Dr. Belt and the ALJ correctly cite the regulatory definition at several points in the record. [Filing No. 24 at 14.] Additionally, the Commissioner contends that it was appropriate for Dr. Belt to discuss K.F's improvement in both speech and behavior in assigning a limitation. [Filing No. 24 at 14.] Lastly, the Commissioner states that Dr. Belt's

opinion is consistent with the medical evidence, and therefore remand is not warranted. [Filing No. 24 at 15.]

In reply, Ms. Porter contends that "the portions [of the transcript] cited by [her] were not isolated temporally, geographically, intellectually, subject-wise, witness-wise, or in any other sense of the word." [Filing No. 27 at 17.] Ms. Porter argues that the Commissioner implicitly admitted that the ALJ misstated the "extreme" standard when he stated that "Dr. Belt's testimony and the ALJ's decision, read in their entirety, demonstrate a correct understanding of the regulatory definition of an 'extreme' limitation." [Filing No. 27 at 17.] Ms. Porter does not dispute that it was proper for Dr. Belt to consider improvement but alleges that Dr. Belt incorrectly believed that any improvement means that a limitation is "marked" and not "extreme." [Filing No. 27 at 18.] Ms. Porter contends that due to this misunderstanding, Dr. Belt's analysis in interacting and relating with others stopped at "marked" and did not explore "extreme" beyond making the incorrect assumption that improvement prevents a finding of "extreme." [Filing No. 27 at 18.] Ms. Porter argues that this Court cannot be certain that if properly instructed on the law, Dr. Belt would testify that K.F. has "marked" limitations rather than "extreme." [Filing No. 27 at 18-19.] Given this, Ms. Porter argues that this cannot be harmless error and that remand is warranted. [Filing No. 27 at 19.]

As part of the interacting with others domain, an ALJ considers "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926(i). Examples of appropriate behaviors include using appropriate words and actions with parents, siblings, and teachers in a variety of emotional and behavioral settings, taking verbal and nonverbal turns, and following social rules of behavior. 20

C.F.R. § 416.926a(i)(1). A child between the ages of six through twelve should be able to talk to people with different points of view and understand how to work in groups. 20 C.F.R. § 416.926a(2)(iv). Inappropriate behaviors include lacking close friends, difficulty in cooperating and communicating with others, and being overly anxious in trying new experiences. SSR 09-5p.

"The regulations governing an initial determination of childhood disability do not ask an ALJ to consider improvement but rather to 'compare your functioning to the typical functioning of children your age who do not have impairments.'" *A.H. ex rel. Williams v. Astrue*, 2011 WL 1935830, at *11 (N.D. Ill. May 18, 2011) (citing 20 C.F.R. § 416.926a(f)(1)); *see also Sewell ex rel. HMC v. Comm. of Soc Sec.*, 2011 WL 3566471, at *9 (E.D. Mich. July 20, 2011) (stating that "the ALJ's reliance on claimant's 'improvement' does not constitute substantial evidence"). Rather, SSR 09-5p states that the ALJ's task is to "focus first on the child's activities, and evaluate how appropriately, effectively, and independently the child functions compared to children of the same age who do not have impairments." SSR 09-5p. An ALJ is obligated to consider a child's limitations on a longitudinal basis and not to decide the issue based on an isolated time frame within the disability period. *Id*.

Under the above standards, the ALJ's remarks during the hearing demonstrate a misunderstanding of the definition of "extreme" by both Dr. Belt and the ALJ. Furthermore, it appears that the ALJ incorporated this misunderstanding into his analysis because he explicitly relied on Dr. Belt's testimony and he cites to several statements by K.F.'s teachers and his big brother that his behavior had improved. [Filing No. 14-2 at 24-25.] However, the ALJ failed to consider how K.F.'s behavior compared to non-impaired children his age throughout the entire disability period. Furthermore, the ALJ never explained why statements about K.F.'s improvement by his "Big Brother," who only knew him six months, and statement by his teacher

9

relating to improvement over the first half of his fifth grade school year were sufficient to explain why this narrow window of improvement outweighed the substantial evidence indicating that K.F. had numerous incidents of poor behavior at home, school, and at social functions.

Without discussing these issues, and absent any comparison between K.F. and non-impaired children his age, substantial evidence does not support the ALJ's finding that K.F.'s limitation in interacting and relating with others was less than "extreme". Accordingly, remand on this issue is required.

### B. Domain Five: Caring for Yourself

Ms. Porter also argues that K.F. has a "marked" limitation in the domain of caring for himself. [Filing No.18 at 20.] She specifically argues that the ALJ omitted medical evidence and school records regarding his ability to care for his emotional health.[5] [Filing No. 18 at 20.] Ms. Porter further argues that the ALJ's failure to consider the evidence most favorable to K.F. warrants remand even if his limitation is less than "marked". [Filing No. 18 at 16.] With regard to K.F.'s functional limitations, Ms. Porter contends that the ALJ's analysis is critically insufficient because it relies on Dr. Belt's assessment, which was based on a misunderstanding of the scope of the caring for yourself domain. [Filing No. 18 at 31.] Furthermore, Ms. Porter asserts that the ALJ's limited analysis in this domain indicates that he failed to consider K.F.'s emotional health as required by social security rulings. [Filing No. 18 at 32.]

---

[5] The Commissioner argues that the ALJ is not required to review evidence that predates an application for SSI Benefits by twelve months. [Filing No. 24 at 8-9 (citing 20 C.F.R. § 416.912(d) and POMS DI 22501.370(A)(4)).] The Commissioner's argument is without merit. These rules and regulations do not allow an ALJ to disregard relevant evidence. They merely limit the time period for which the SSA is obligated to develop the medical record. Furthermore, the Seventh Circuit mandates that an ALJ must consider all evidence in the record. *Varga v. Colvin*, 794 F.3d 809, 812 (7th Cir. 2015). However, this error of law was harmless because the ALJ did consider evidence which predated the evidence by twelve months.

The Commissioner argues that substantial evidence supports the ALJ's less than "marked" findings and that Ms. Porter has not met her burden of showing that the omitted records would compel a contrary result. [Filing No. 24 at 4.] The Commissioner notes that the ALJ cited the correct standard for evaluating the caring for yourself domain. [Filing No. 24 at 18]. The Commissioner also states that the ALJ considered the "record as a whole" while evaluating K.F's limitations in interacting and relating with others. [Filing No. 24 at 18.] The Commissioner contends that the ALJ provided a logical bridge between his conclusion that the limitation was not "marked" and the evidence showing K.F.'s symptoms were improving with time and medication. [Filing No. 24 at 18.] The Commissioner argues that Dr. Belt mentioned K.F.'s behavioral issues while interacting and relating with others, and therefore considered them in his analysis of caring for yourself. [Filing No. 24 at 19.] The Commissioner further argues that Ms. Porter has to failed demonstrate how K.F.'s behavioral problems would justify a "marked" limitation. [Filing No. 24 at 19-20.] Furthermore, the Commissioner argues that the ALJ's finding was supported by the state agency opinions other than Dr. Belt's, [Filing No. 24 at 19], and that the ALJ reviewed most of the evidence cited by Ms. Porter elsewhere in the decision, and the ALJ is not required to mention every piece of evidence. [Filing No. 24 at 18-21.]

In her reply brief, Ms. Porter reiterates that the ALJ omitted material evidence in his decision and that he failed to consider a significant amount of evidence when evaluating K.F.'s limitations in this domain. [Filing No. 27 at 3-12.] Ms. Porter concedes that the ALJ cited the correct standard for evaluating limitations in this domain, but that his analysis only consisted of a one paragraph statement relating to K.F.'s physical health, indicating that he did not apply the actual standard. [Filing No. 27 at 15.] She further argues that K.F.'s aggression and behavioral issues are serious, warranting at least a "marked" limitation. [Filing No. 27 at 14.] Ms. Porter

11

argues that a complete review of the evidence will show that K.F.'s limitations in this domain are "marked," if not "extreme". [Filing No. 27 at 16.]

The domain of caring for yourself considers how well a child maintains a heathy emotional and physical state. 20 C.F.R. § 416.926a(k). This includes three distinct aspects: (1) how well the child gets his/her physical and emotional wants and needs met in appropriate ways; (2) how the child copes with stress and changes in his/her environment; and (3) whether the child takes care of his/her own health, possessions, and living area. *Id.* Social Security regulations set forth examples of limited functioning in this domain, such as "engages in self-injurious behavior," "does not spontaneously pursue enjoyable activities or interests," and "does not dress or bathe [himself] appropriately for [his] age..." *Id.* The regulations provide that an adolescent without an impairment should begin to feel increasingly independent in all of his day-to-day activities. *Id.*

In discussing the caring for yourself domain, the ALJ again did not cite or refer to any medical evidence about K.F.'s ability to care for himself emotionally. Nor did he discuss how K.F.'s inability to cope with stress and change would affect this domain. Instead the ALJ focused solely on a statement about K.F.'s personal hygiene contained in a January 2016 teacher report completed by K.F.'s special education teacher, Breanna Fields. Most significantly, the ALJ left out Ms. Fields' statements that K.F. has very serious emotional and behavioral problems, especially when he does not take his medication. But as 20 C.F.R. § 416.926a(k)(1) specifies, this domain covers a whole group of capabilities other than hygiene, including: identifying and regulating feelings, age-appropriate "feeding," employing age-appropriate coping strategies, and making safe decisions. *Id.* Thus, the evidence pertaining to K.F.'s emotional behaviors is relevant to this domain and, upon considering the evidence in this case, the Court concludes that the ALJ did not sufficiently explain why he found that K.F. was not "markedly" limited in caring for

himself. *See [Kastner v. Astrue, 697 F.3d 642, 648 (7th Cir. 2012)](#)* ("We have repeatedly held that an ALJ must provide a logical bridge between the evidence in the record and his conclusion."). The ALJ's failure to incorporate those issues into his analysis is not harmless error, and therefore, remand on this basis is necessary.

### C. Failure to Evaluate the of Dr. Meyer's Testimony

Ms. Porter also asserts that the ALJ erroneously failed to evaluate and weigh Dr. Meyer's opinion. [[Filing No. 18 at 25](#).]

In response, the Commissioner argues that this claim is without merit because the ALJ explicitly considered Dr. Meyer's finding that K.F. had inadequate social skills and appeared to have low frustration tolerance in his analysis of K.F.'s limitations in interacting and relating with others domain. [[Filing No. 24 at 12](#).] The Commissioner further argues that Dr. Meyer did not give an opinion about K.F.'s level of functioning in either domain for the ALJ to weigh, and therefore, pursuant to Seventh Circuit precedent, the ALJ did not have to assign a weight to Dr. Meyer's testimony. [[Filing No. 24 at 12](#).]

In reply, Ms. Porter contends that the Commissioner does not dispute that the ALJ failed to evaluate Dr. Meyer's opinions in domains of interacting of relating with others and caring for yourself. [[Filing No. 27 at 13](#).] Ms. Porter argues that on remand if the ALJ accepts Dr. Meyer's opinions that that K.F. "needs a great deal of support from others to accomplish his daily tasks" and "K.F.'s concentration appears to be limited and his persistence is likely to be compromised as he required prompts and breaks," then the ALJ must consider them when evaluating K.F.'s ability to care for himself. [[Filing No. 27 at 14](#).] Conversely, if the ALJ rejects them then he must explain his reasoning why. [[Filing No. 27 at 14](#).]

13

An ALJ must consider all medical opinions in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c)[6]; *see also Roddy v. Astrue*, 705 F.3d 631 (7th Cir. 2013). "State agency medical and psychological consultants and ... other medical specialists are highly qualified" and serve as "experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i); *see also Walters v. Astrue*, 444 F. App'x 913, 917 (7th Cir. 2011) (stating that medical opinions from consultative examiners are "not just another piece of evidence"). "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . and other medical specialists as opinion evidence," and "evaluate [their] findings using the relevant factors." 20 C.F.R. § 416.927(e)(2)(i)-(ii); *see also* SSR 96–6p, (stating that ALJs "are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions").

The ALJ alluded to a portion of Dr. Meyer's report in the findings section of his decision. However, the ALJ failed to evaluate Dr. Meyer's opinions by either assigning a weight or incorporating them into his analysis of either domain.[7] Ms. Porter contends that the ALJ's failure to weigh Dr. Meyer's opinion violates this Circuit's precedent and the regulatory requirement that the ALJ explain the weight given to a state agency medical consultant's opinion. This Court agrees for two reasons. First, the Commissioner's argument that the ALJ was not required to assign Dr.

---

[6] This regulation has been overruled but is still applicable to claims filed before March 27, 2017. This claim was filed on August 27, 2012, therefore, it applies to Ms. Porter's claim. [Filing No. 14-7 at 2.]

[7] The Commissioner states that the ALJ "explicitly considered Dr. Meyer's relevant clinical findings in assessing K.F.'s limitations in interacting and relating with others," [Filing No. 24 at 12.] A review of the decision reveals that this statement is inaccurate. The ALJ does not reference any of Dr. Meyer's opinions or findings in his analysis. If Dr. Meyer's opinions were considered at all, it is because Dr. Belt reviewed Dr. Meyer's opinions, and incorporated them into his findings.

Meyer's medical opinion weight is not supported by the case cited for that proposition.[8]  Second, although it is well settled that an ALJ does not need to address every piece of evidence in the record, the ALJ's failure to even mention Dr. Meyer's opinions in his analysis of both domains, let alone discuss their significance or the weight they were to be given, leaves a significant gap in his reasoning.  *See* Zurawski v. Halter, 245 F.3d 881, 889 (7th Cir. 2001).  On remand, the ALJ should evaluate and weigh Dr. Meyer's opinions and incorporate them into his analysis of both domains.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **VACATES** the ALJ's decision denying Ms. Porter's application for SSI on behalf of K.F. and **REMANDS** this matter for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

On remand the ALJ should:  (1) apply the correct standard of "extreme" to his analysis of K.F.'s limitations in interacting with others, (2) incorporate K.F.'s emotional limitations into his analysis of K.F.'s limitations in carrying for himself, and (3) evaluate and weigh the findings of Dr. Meyer and incorporate those findings into his analysis of both domains.

---

[8] In *Suide v. Astrue*, the Seventh Circuit held that a doctor's report, which was performed before a second stroke and did not include a functional assessment about physical abilities or opine on any limitations the claimant's impairments may have caused, could not be used to support a *specific limitation* that the claimant could stand or walk for six hours a day.  371 F. App'x 684, 690 (7th Cir. 2010) (emphasis added).  The opinion does not state that an ALJ may fail to weigh a consultative medical examiners opinion.  In this case, Dr. Meyer's opined that "K.F. has inadequate social skills and low frustration tolerance," and that K.F. "needs a great deal of support from others to accomplish his daily tasks" and "K.F.'s concentration appears to be limited and his persistence is likely to be compromised as he required prompts and breaks." [Filing No. 14-11 at 52-53.]  These statements speak to K.F.'s functional limitations the domains of interacting and relating with other and caring for himself.  Therefore, the ALJ should have evaluated them in his analysis.

Date: 7/13/2018

*signature*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution via ECF only to all counsel of record.